United States District Court
Southern District of Texas
**ENTERED**
November 17, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHNATHAN ARTHURTON, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:25-CV-02708 |
| | § | |
| CARMAX AUTO FINANCE ET AL., | § | |
| *Defendants*. | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Court are Defendant CarMax Business Services, LLC's[1] ("CarMax") Motion to Dismiss and PNC Bank, N.A.[2] ("PNC Bank") and The PNC Financial Services Group, Inc.'s ("PNC Financial Services," together, the "PNC Defendants") Motion to Dismiss.[3]  ECF 12; ECF 15.  For the reasons explained below, the Court RECOMMENDS that both Motions be GRANTED.

### I.    Factual and Procedural Background.

On April 29, 2025, Plaintiff applied for a $75,000 car loan from PNC Bank.  ECF 1 at 5.  Plaintiff represents that his application contained "a special endorsement and fiduciary instructions" that served as "a presentment of value in good faith."  *Id.*

---

[1] Defendant notes it is incorrectly named as CarMax Auto Finance. ECF 15 at 1.

[2] The PNC Defendants note the Complaint lists The PNC Financial Services Group, Inc. as a defendant but refers exclusively to "PNC Bank," i.e., PNC Bank, N.A. ECF 12 at 2. The Court construes Plaintiff's claims as against both PNC Bank and PNC Financial Services. *See Barksdale v. King*, 699 F.2d 744, 746 (5th Cir. 1983) (pro se pleadings should be liberally construed).

[3] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  ECF 5.

PNC Bank rejected Plaintiff's loan application without responding. *Id.* Plaintiff alleges he contacted PNC's complaint department and provided information regarding the special endorsement and his "fee schedule." *Id.* at 6.

On May 5, 2025,[4] Plaintiff sent a similar notice of fiduciary instructions and a promissory note to Defendant CarMax. *Id.* at 5. Plaintiff represents the documents contained instructions giving CarMax five days to reject or rebut the terms; CarMax did not respond. *Id.*

Plaintiff initiated this action on June 5, 2025. ECF 1. The PNC Defendants filed a Motion to Dismiss on July 21, 2025. ECF 12. CarMax filed a Motion to Dismiss on August 15, 2025. ECF 15. On October 13, 2025, CarMax filed a Notice of Non-Opposition to Motion to Dismiss, noting Plaintiff's failure to respond to either Motion to Dismiss. ECF 17; *see also,* Loc. R. S.D. Tex. 7.3[5] (setting a 21-day period to respond to motions). Under the Local Rules, the Court construes Plaintiff's failure to respond as his position that he has opposition to the motion. Loc. R. S.D. Tex. 7.4. Still, it is not appropriate for the Court to grant a motion to dismiss solely based on Plaintiff's failure to respond. *See Garza v. Formosa Plastics Corp.*, No. CIV.A. V-10-54, 2011 WL 121562, at *2 (S.D. Tex. Jan. 11, 2011); *Lopez v. VHS*

---

[4] Plaintiff also gives the date as May 9, 2025. *See* ECF 1 at 7.
[5] The Local Rules can be found at the Court's website. *See* https://www.txs.uscourts.gov/page/local-federal-rules.

*San Antonio Partners, LLC*, Civil Action No. 17-CA-151, 2017 WL 10841974, at *1 n.1 (W.D. Tex. Dec. 19, 2017).

## II.    Legal Standards.

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017) (citing *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). However, the court does not apply the same presumption to conclusory statements or legal conclusions. *Iqbal*, 556 U.S. at 678-79.

Generally, the court may consider only the allegations in the complaint and any attachments thereto in ruling on a Rule 12(b)(6) motion. If a motion to dismiss refers to matters outside the pleading it is more properly considered as a motion for summary judgment. *See* FED. R. CIV. P. 12(d). However, the court may take judicial notice of public documents and may also consider documents a defendant attaches

3

to its motion to dismiss under 12(b)(6) if the documents are referenced in the plaintiff's complaint and central to the plaintiffs' claims. *See Norris v. Hearst Trust,* 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000); *King v. Life Sch.*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011).

### III.    Analysis.

The Court notes at the outset that Plaintiff's Complaint is based on the thoroughly rejected, sovereign citizen redemption theory. *Compare* ECF 1 at 6 (misquoting *Eckert v. Commissioner of Internal Revenue*, 42 F.2d 158 (2d Cir. 1930) to argue individuals can issue legal tender), *with Rogers v. Cap. One*, No. 3:23-CV-2392-JGC, 2024 WL 1119312, at *2 (N.D. Ohio Mar. 14, 2024) (explaining in redemption theory case that misquoting *Eckert v. Commissioner* to that end directly contradicts the decision's holding). The pseudo-legal theory asserts individuals can create instruments that are the equivalent of legal tender. *See Hennis v. Trustmark Bank*, No. CIV.A.210CV20KSMTP, 2010 WL 1904860, at *5 (S.D. Miss. May 10, 2010) (explaining the redemption theory and collecting cases rejecting it). As Plaintiff did here, redemption theory litigants often mail 'instruments' to lenders and then assert untenable breach of contract, breach of fiduciary duty, and UCC violations. *See, e.g.*, *Wilkerson v. Gozdan*, No. 2:14-CV-693-WKW, 2014 WL 4093279 (M.D. Ala. Aug. 19, 2014) (recommending dismissal for plaintiff's breach

of fiduciary duty claims where he mailed promissory note to mortgage lender who ignored demands); *McGee v. Nissan Motor Acceptance Corp.*, 619 F. App'x 555 (7th Cir. 2015) (noting plaintiff's claims under UCC were frivolous where plaintiff mailed bill of exchange to lender in satisfaction of his car loan). Courts in this Circuit routinely dismiss these claims. *See, e.g.*, *Wilson v. GMFS Mortg.*, No. CV 22-478-SDD-RLB, 2023 WL 1542431, at *7 (M.D. La. Jan. 9, 2023), *report and recommendation adopted,* No. VILACTION22478SDDRLB, 2023 WL 1802406 (M.D. La. Feb. 7, 2023); *McClain v. I-10 Mac Haik CDJR Ltd.*, No. 4:21-CV-3240, 2023 WL 361554, at *4 (S.D. Tex. Jan. 23, 2023) (collecting cases).

### A. Plaintiff failed to plead any facts or allegations relating to PNC Financial Services.

Plaintiff's Complaint identifies PNC Financial Services as a defendant but fails to even mention PNC Financial Services or allege any facts involving PNC Financial Services. *See generally* ECF 1. Instead, the factual allegations refer to PNC Bank. *Id.* Plaintiff also pleaded no facts regarding the relationship between the two entities. *Id.* Therefore, any claim against PNC Financial Services should be dismissed. *See* Fed. R. Civ. P. 12(b)(6).

### B. Plaintiff's breach of contract claims fail as a matter of law because he fails to allege the existence of a valid contract.

Under Texas law, the essential elements for a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by

the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.— Houston [14th Dist.] 2005, pet. denied)). The existence of a valid contract requires that: "(1) an offer was made; (2) the other party accepted; (3) the parties had a meeting of the minds; (4) each party consented; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding." *Box v. PetroTel, Inc.*, 33 F.4th 195, 202 (5th Cir. 2022) (cleaned up) (citing *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 (Tex. 2018)).

### 1. Plaintiff failed to plead facts that could support the formation of a valid contract with PNC Bank.

Plaintiff alleges he sent "instruments" to PNC Bank stating it was required either to decline his offer or be bound by it, and that PNC did not respond. ECF 1 at 8. The alleged facts fail to demonstrate the existence of a valid contract. Read generously, Plaintiff claims he made an offer to PNC Bank. The Complaint alleges PNC Bank did not respond, and therefore did not accept the offer. *See Texas Ass'n of Ctys. Cnty. Gov't Risk Mgmt. Pool v. Matagorda Cnty.*, 52 S.W.3d 128, 132 (Tex. 2000) ("[A]s a general rule silence and inaction will not be construed as an assent to an offer"); *Redmond v. Williams*, No. 422CV00910SDJAGD, 2023 WL 7984388, at *6 (E.D. Tex. Sept. 13, 2023) (finding no contract was formed where plaintiff sent a bill of exchange in purported satisfaction of debt to mortgage servicer who did not

respond), *report and recommendation adopted,* No. 422CV00910SDJAGD, 2024 WL 420115 (E.D. Tex. Feb. 5, 2024). The Complaint fails to allege any exception to the fundamental principle that silence does not constitute acceptance of an offer. *Cf.* 2 WILLISTON ON CONTRACTS § 6:67 (4th ed. 2025) ("A duty to reject an offer may arise, such that silence or inaction may constitute acceptance, where state law imposes a duty to act, a prior course of dealing between the parties makes assent by silence reasonable or expected, or the offeree retains a benefit by failing to act."). Additionally, the Complaint fails to allege any facts that could support a meeting of the minds, mutual consent, or an intent by both parties to be bound. Because the Complaint fails to allege facts that demonstrate the existence of a valid contract between Plaintiff and PNC Bank, Plaintiff's breach of contract claim against it should be dismissed.

**2. Plaintiff failed to plead facts that could support the formation of a new contract with CarMax.**

Plaintiff's breach of contract claim against CarMax involves the same pattern of assertions: he and CarMax entered into a new contractual relationship when CarMax received his promissory note and failed to reject its terms. ECF 1 at 8. Because the facts asserted by Plaintiff fail to demonstrate the formation of a new, valid contract between Plaintiff and CarMax, Plaintiff's breach of contract claim fails as a matter of law. Plaintiff's own allegation that CarMax failed to respond to his alleged offer demonstrates no contract was formed. Plaintiff is simply wrong in

claiming that CarMax's silence resulted in the formation of a contract. *See* ECF 1 at 8 ("Their lack of rebuttal, continued silence, and inaction satisfies the conditions for breach of contract"). Instead, Plaintiff's allegations demonstrate that, as a matter of law, he cannot state a claim for breach of contract against CarMax. Therefore, his breach of contract claim against CarMax should be dismissed.

**C. Plaintiff's breach of fiduciary duty claims fail as a matter of law.**

Under Texas law, a breach of fiduciary duty claim requires the plaintiff to show: (1) a fiduciary relationship between the plaintiff and defendant, (2) the defendant breached the fiduciary duty owed to the plaintiff, and (3) the defendant's breach resulted in an injury to the plaintiff or benefit to the defendant. *See Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (citing *Jones v. Blume,* 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006) (pet. denied)).

Texas law recognizes two types of fiduciary relationships: formal and informal. *See Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App.—Houston 2003) (no pet.). Formal fiduciary relationships occur where fiduciary duties arise as a matter of law in a formal relationship, such as attorney-client, partnership, principal-agent, or trustee relationships. *See Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). Informal fiduciary duties "may arise from a moral, social, domestic or purely personal relationship of trust and

confidence." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998).

> **1. Plaintiff's Complaint fails to allege facts that could demonstrate the existence of a fiduciary relationship between Plaintiff and PNC Bank.**

Here, Plaintiff argues that PNC Bank owed him a fiduciary duty "as a lender evaluating a commercial settlement" and that it breached this duty while evaluating his credit application, which in turn caused him damages. ECF 1 at 5, 9.

None of the facts alleged support a formal fiduciary relationship between Plaintiff and PNC Bank. The relationship between a bank and its customers—let alone potential customers—is generally not considered a fiduciary relationship under Texas law. *See Berry v. First Nat'l Bank of Olney*, 894 S.W.2d 558, 560 (Tex. App.—Fort Worth 1995) (no pet.). The evaluation of a credit application is an arms-length business transaction which fails to meet the requirements of a fiduciary relationship. *See Abetter*, 113 S.W.3d at 508 (explaining a fiduciary relationship requires "a party to place the interest of the other party before his own," something more than "the standards required in dealings between ordinary parties").

Plaintiff also failed to plead any facts to support the existence of an informal fiduciary relationship. *See Associated Indem.*, 964 S.W.2d at 288 ("To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the

suit."). *See also Wesco v. Cap. One Auto Fin.*, No. 3:24-CV-2276-D-BW, 2024 WL 5358445, at *2 (N.D. Tex. Dec. 9, 2024) (finding no formal or informal fiduciary relationship between car buyer and lender who evaluated and denied his loan application), *report and recommendation adopted,* No. 3:24-CV-2276-D, 2025 WL 295737 (N.D. Tex. Jan. 23, 2025). Because Plaintiff failed to allege any facts that plausibly support the existence of a fiduciary relationship with PNC Bank, the breach of fiduciary duty claim should be dismissed.

### 2. Plaintiff's Complaint fails to allege facts that could demonstrate the existence of a fiduciary relationship between Plaintiff and CarMax.

Plaintiff argues CarMax owed him a fiduciary duty "as a property holder and dealer," which it breached by failing to respond to his tender of a promissory note. ECF 1 at 8-9, 5-6. The Complaint does not explain the Parties' relationship, but CarMax represents it financed a vehicle purchase for Plaintiff. ECF 15 at 1-2.

As with his breach of fiduciary duty claim against PNC, Plaintiff has failed to allege any facts that could support the existence of a fiduciary relationship with CarMax. *See Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 192 (S.D. Tex. 2007) ("Texas courts have held that the relationship between a borrower and lender is not a fiduciary one.") (citing *1001 McKinney Ltd. v. Credit Suisse First Boston Mortgage Capital,* 192 S.W.3d 20 (Tex. App.—Houston [14th Dist.] 2005) (pet. denied)), *aff'd,* 269 F. App'x 523 (5th Cir. 2008). Similarly, Plaintiff's

allegations also fail to support the existence of an informal fiduciary relationship Finally, Plaintiff's allegation that CarMax failed to timely respond to his documents cannot support a claim for the breach of a putative fiduciary duty.

### D. Plaintiff's UCC claims against both Defendants fail as a matter of law.

Plaintiff brings two UCC claims, under UCC §§ 3.502 and 3.603, against both PNC and CarMax. Texas UCC § 3.502 outlines the rules governing dishonor of a negotiable instrument. TEX. BUS. & COMM. CODE § 3.502. Texas UCC § 3.603 governs the tender of payment on obligations arising from negotiable instruments. TEX. BUS. & COMM. CODE § 3.603. Under the UCC, a negotiable instrument is "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges." TEX. BUS. & COMM. CODE § 3.104(a).

### 1. Plaintiff's UCC claims against PNC Bank fail as a matter of law because the Complaint does not demonstrate the existence of a valid negotiable instrument.

Plaintiff alleges he sent "commercial instruments" in his credit application to PNC Bank and that PNC Bank's failure to respond constituted dishonor under section 3.502. ECF 1 at 8. Plaintiff does not allege he made an unconditional promise to pay a fixed amount of money. Therefore, he has failed to plead the existence of a negotiable instrument that could trigger liability under Texas UCC §§ 3.502 or 3.603. *See also Chavis v. T-Mobile US, Inc.*, No. A-23-CV-1513-DII-SH, 2024 WL 150734, at *4 and n.2 (W.D. Tex. Jan. 11, 2024) (noting that courts have

"uniformly found" that a "bill of exchange" and similarly styled documents "created by a private citizen cannot be used as legal tender in the United States," citing multiple cases).

### 2. Plaintiff's UCC claims against CarMax fail for the same reason.

Plaintiff alleges CarMax failed to respond to a promissory note he sent them and unjustifiably retained the negotiable instrument. ECF 1 at 8.

Again, Plaintiff's UCC claims under sections 3.502 and 3.603 fail because the facts do not show the existence of a valid negotiable instrument or tender of payment. None of the facts show CarMax accepted the note or retained an interest in it, and simply sending someone a note does not create legal obligations in this case. *See SGK Props., L.L.C. v. U.S. Bank Nat'l Ass'n for Lehman Bros. Small Balance Com. Mortg. Pass-Through Certificates, Series 2007-3*, 881 F.3d 933, 941 (5th Cir. 2018) (under Texas law, a note is enforceable if it is signed by the obligor and the obligee has some interest in it or a right to enforce). *See also Chavis*, No. A-23-CV-1513-DII-SH, 2024 WL 150734, at *4 and n.2. Texas UCC § 3.603 is also inapplicable because no tender of payment on a note has been alleged. *See Fed. Fin. Co. v. Delgado*, 1 S.W.3d 181, 187 (Tex. App.—Corpus Christi 1999) (no pet.) (tender requires "not merely the readiness, ability, and an offer to make payment, but also actually producing the money"); *Texas Emps. Ins. Ass'n v. Underwriting Members of Lloyds*, 836 F. Supp. 398, 409 (S.D. Tex. 1993) (noting per Texas law that tender

of payment means unconditional, full payment of a debt and actual relinquishing funds to the payee).

### E. All of Plaintiff's claims should be dismissed with prejudice.

When a complaint is dismissed under Rule 12(b)(6), courts should grant the plaintiff, especially if pro se, leave to amend unless amendment would be futile. *See Mason v. Fremont Inv. & Loan*, 671 F. App'x 880, 883 (5th Cir. 2016) (approving denial of leave to amend where amendment would be futile); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir.2002). *See also Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) ("[A] *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed."). Dismissal with prejudice is also appropriate where "the legal theory upon which a complaint relies is indisputably meritless." *Gregory v. McKennon*, 430 F. App'x 306, 308 (5th Cir. 2011) (cleaned up).

However, dismissal with prejudice is appropriate in this case because amendment cannot cure the fact Plaintiff's claims are based on a flatly rejected pseudo-legal theory. *See Hennis*, No. CIV.A.210CV20KSMTP, 2010 WL 1904860, at *7–8 (dismissing with prejudice plaintiff's redemption-theory breach of contract and UCC claims based on sending creditors bill of exchange); *Wilson*, No. CV 22-478-SDD-RLB, 2023 WL 1542431, at *8 (recommending dismissal with prejudice because further amendment of frivolous redemption theory claims would be futile);

*McClain*, No. 4:21-CV-3240, 2023 WL 361554, at *5 (dismissing redemption theory claims with prejudice).

Additionally, dismissal with prejudice is appropriate here because by failing to respond to Defendants' Motions, Plaintiff has pleaded his best case. *See Lyons v. Starbucks Coffee Co., N*o. 3:19-CV-2457-S-BT, 2020 WL 5732638, at *4 (N.D. Tex. Aug. 24, 2020), report and recommendation adopted, No. 3:19-CV-2457-S-BT, 2020 WL 5710245 (N.D. Tex. Sept. 24, 2020) ("when a plaintiff does not file a response to a Rule 12(b)(6) motion or request leave to amend, the court may deny the plaintiff leave to amend because the plaintiff has already pleaded his or her best case."); *Vanskiver v. City of Seabrook, Texas*, Civil Action No. H-17-3365, 2018 WL 560231, at *7 (S.D. Tex. Jan. 24, 2018).

## IV.    Conclusion and Recommendation.

For the reasons stated above, the Court RECOMMENDS that Defendants' Motions to Dismiss (ECF 12, ECF 15) be GRANTED and Plaintiff's Complaint be DISMISSED WITH PREJUDICE.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(C).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto.*

*Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.


  Signed on November 17, 2025, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge